448 A.2d 1386

**Clair A. BORTNER, Individually and as Administrator of the Estate of Jeffrey B. Bortner, Appellant,**

v.

**Rodger E. GLADFELTER, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued March 24, 1981.

Filed Aug. 6, 1982.

494

Samuel K. Gates, York, for appellant.

George Douglas, Carlisle, for appellee.

Before PRICE, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

Jeffrey Bortner was killed when a vehicle in which he was a passenger left a two-lane road in York County and overturned. Bortner and the driver, Rodger E. Gladfelter, had been drinking wine prior to the accident, and Gladfelter, a jury found, was visibly intoxicated.[1] The jury concluded that Bortner, age 18, and Gladfelter, age 17, were both negligent and that their negligence was equally responsible (50%) for Bortner's death. The jury also determined that the damages sustained in the wrongful death action were in the amount of $3,283.70, being the amount of the funeral expenses,[2] and that no damages had been sustained in the survival action. Plaintiff filed a motion for new trial, and when it was denied this appeal followed.

■ Appellant contends that it was error to admit into evidence the alcohol level contained in blood drawn from appellee approximately one hour after the accident. There is no merit in this argument. This evidence was relevant to assist the jury in determining whether plaintiff's decedent had been guilty of contributory negligence or had assumed the risk of riding with an intoxicated driver. To permit such a finding, of course, it was necessary that appellee show by a preponderance of the evidence that plaintiff's decedent knew of the risk and appreciated its unreasonable character. *Weaver v. Clabaugh*, 255 Pa.Super. 532, 536, 388 A.2d 1094, 1096 (1978); *Watson v. Zanotti Motor Co.*, 219 Pa.Super. 96, 98, 280 A.2d 670, 672 (1971). This he did by

1. A blood test disclosed an alcoholic content in Gladfelter's blood of 0.22%.

2. This amount was reduced by the sum of $1,500 previously paid on account of funeral expenses, and the balance was reduced by 50% as required by the Comparative Negligence Act of April 28, 1978, P.L. 202, No. 53, § 10(89), as amended by Act of October 5, 1980, P.L. 693, No. 142, § 222(a), 42 Pa.C.S. § 7102. The molded verdict against defendant-appellee, therefore, was in the amount of $891.95.

the testimony of a board certified pathologist who expressed the opinion, based on the results of the blood test, that appellee had been visibly intoxicated at and immediately prior to the time of the accident.

■ Appellant also argues that the trial court improperly instructed the jury to apply an "average man" standard of conduct in determining whether his decedent had voluntarily assumed the risk. However, appellant failed to object to this instruction; and, therefore, he is precluded on appeal from assigning the alleged error as a basis for a new trial. *Broxie v. Household Finance Company*, 472 Pa. 373, 377, 372 A.2d 741, 743 (1977); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

■ Whether to grant a new trial because of inadequacy of the verdict is peculiarly within the competence of the trial court, and its discretion is considerable. Its action, therefore, will not be disturbed on appeal except where there has been a clear abuse of discretion. *Wilson v. Nelson*, 437 Pa. 254, 256, 258 A.2d 657, 658–659 (1969); *Dougherty v. Sadsbury Township*, 299 Pa.Super. 357, 360, 445 A.2d 793, 795 (1982); *Mueller v. Brandon*, 282 Pa.Super. 37, 41, 422 A.2d 664, 666 (1980); *Palmer v. Brest*, 254 Pa.Super. 532, 536, 386 A.2d 77, 79 (1978). However, appellate courts do not abdicate their power of review and will reverse where a clear abuse of discretion appears. *Hose v. Hake*, 412 Pa. 10, 14, 192 A.2d 339, 341 (1963); *Dougherty v. Sadsbury Township*, *supra*.

"[T]o support the granting of a new trial for inadequacy, 'the injustice of the verdict should stand forth like a beacon.' So long as the verdict bears a reasonable resemblance to the damages proved, it is not the function of the court to substitute its judgment for that of the jury. *Elza v. Chovan*, 396 Pa. 112, 118, 152 A.2d 238, 240 (1959); *Morris v. Peckyno*, 202 Pa.Superior Ct. 490, 492, 198 A.2d 396, 397 (1964). In the latter case, [the Superior Court,] quoting 15 Am.Jur., Damages, § 231, stated ' "As a rule, a verdict in an

action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evident failure of justice to the plaintiff, or where the award is so inadequate that it should not be permitted to stand. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more." ' " *Rutter v. Morris*, 212 Pa.Super. 466, 469–470, 243 A.2d 140, 142 (1968). *See also Dougherty v. Sadsbury Township, supra; Gudat v. Heuberger*, 275 Pa.Super. 535, 540, 419 A.2d 30, 32 (1980); *Hevener v. Reilly*, 266 Pa.Super. 386, 392, 404 A.2d 1343, 1346 (1979); *Poltorak v. Sandy*, 236 Pa.Super. 355, 366–367, 345 A.2d 201, 205–206 (1975); *Gottlob v. Hillegas*, 195 Pa.Super. 453, 457, 171 A.2d 868, 870–871 (1961).

The purpose of the Wrongful Death Act of April 15, 1851, as amended, 12 P.S. § 1601 et seq.,[3] was to compensate certain enumerated relatives of the decedent for pecuniary loss sustained because they had been deprived of that portion of the decedent's earnings which they would have received if the decedent had not died prematurely. *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 648–649, 26 A.2d 659, 661 (1942); *Manning v. Capelli*, 270 Pa.Super. 207, 211, 411 A.2d 252, 254 (1979). Recovery in a wrongful death action may also be had for "reasonable hospital, nursing, medical, funeral expenses, and expenses of administration necessitated by rea-

**3.** The Act of 1851 has been repealed by the Judiciary Act Repealer Act of April 28, 1978, P.L. 202, No. 53, § 2(a)[279], 42 Pa.C.S. § 20002(a)[279], effective June 27, 1978. It has been re-enacted as a part of the Judicial Code of July 9, 1976, at 42 Pa.C.S. § 8301.

son of injuries causing death." Act of April 26, 1855, P.L. 309, § 1, 12 P.S. § 1602.[4]

▮ In the instant case, the jury's verdict in the wrongful death action was for Bortner's funeral expenses. The evidence was such that the jury could reasonably conclude that the decedent's parents sustained no further pecuniary loss as a consequence of their son's death. He had attained his 18th birthday prior to death but had been living with and had been supported primarily by his parents. He was employed as a mechanic by York Transportation and was earning $3.00 per hour. He also assisted, on a part-time basis, in his father's small automobile repair business. His talents and economic resources were such that a college education was unlikely, his future earnings were limited to those of an automobile mechanic, and the likelihood that those earnings would have been shared with his parents was not great. Based on this evidence, we are unable to say that the verdict in the wrongful death action was unreasonable.

▮ However, the finding in the survival action that the decedent's estate sustained no pecuniary loss is unreasonable and not supported by the evidence. With respect to this item of damage, the jury was properly instructed to ascertain what the earnings of the deceased person would have been during the period of his life expectancy and to deduct therefrom the probable cost of his maintenance as shown by the evidence. *See McClinton v. White*, 497 Pa. 610, 444 A.2d 85 (1982); *Incollingo v. Ewing*, 444 Pa. 263, 299, 282 A.2d 206, 229 (1971); *Murray v. Philadelphia Transportation Co.*, 359 Pa. 69, 74, 58 A.2d 323, 325 (1948); *Prince v. Adams*, 229 Pa.Super. 150, 154, 324 A.2d 358, 360 (1974); 20 Pa.C.S. §§ 3371–3373. The uncontradicted evidence was that the decedent's life expectancy was 50.6 years, during which he would have earned $6,942.00 per year and expended approximately $3,218.00 per year to maintain himself. The net

4. This statute has been repealed, effective June 27, 1978, by the Judiciary Act Repealer Act of April 28, 1978, P.L. 202, No. 53, § 2(a)[310], 42 Pa.C.S. § 20002(a)[310]. It has been re-enacted as a part of the Judicial Code of July 9, 1976, at 42 Pa.C.S. § 8301.

earnings during decedent's life expectancy, it was testified, would have been $77,659.00.

In view of this evidence, a refusal to find that the decedent's estate had sustained any pecuniary loss is shocking. The "injustice of the verdict . . . stand[s] forth like a beacon." *Elza v. Chovan, supra* 396 Pa. at 118, 152 A.2d at 240. *See and compare Prince v. Adams, supra.*

The verdict cannot be explained as a compromise. In response to a special interrogatory, the jury found that 50% of the total causal negligence was attributable to appellee and 50% to the decedent. When asked to state "the amount of damages, if any, sustained by the plaintiff as a result of the accident without regard to and without reduction by the percentage of causal negligence, if any, that you have attributed to the plaintiff's decedent," the jury answered: "No figure." This suggests that the jury must have been influenced by a misconception of the law, or by some other improper consideration. Where a jury refuses to give any recovery at all to a litigant who is entitled to at least some recovery, "we can have no confidence in the fairness of the jury's deliberations." *Hevener v. Reilly, supra,* 266 Pa.Super. at 394, 404 A.2d at 1347. Consequently, we are constrained to conclude that a new trial is necessary and that it was an abuse of discretion for the trial court to refuse to grant the same.

■ There remains to be considered the extent of the new trial to be awarded. The wrongful death action and the survival action seek to enforce distinct causes of action. *Schwab v. P. J. Oesterling & Son, Inc.,* 386 Pa. 388, 392, 126 A.2d 418, 420 (1956); *McClinton v. White,* 285 Pa.Super. 271, 277, 427 A.2d 218, 221 (1981), *revd on other grounds,* 497 Pa. 610, 444 A.2d 85 (1982); *Mohler v. Worley,* 179 Pa.Super. 56, 61, 116 A.2d 342, 344 (1955); *Funk v. Buckley & Co., Inc.,* 158 Pa.Super. 586, 590, 45 A.2d 918, 920 (1946). *See also* 7 Goodrich-Amram § 2201:38. By virtue of Pa.R.C.P. 213(e), the two causes of action may be enforced in one action, and if independent actions are commenced they must be consolidated for trial. Even in consolidated cases, however, the

jury must bring in a separate verdict for each cause of action. Feldman, Pennsylvania Trial Guide § 33.6. The award of damages in each must be based upon considerations which are different from those in the other. Here, the verdict in the wrongful death action bore a reasonable relation to the evidence; only the verdict in the survival action did not. Therefore, we perceive no good reason for requiring a new trial in the wrongful death action.

The issues of causal negligence and contributory negligence have also been litigated fully, and there is no reason for setting aside the jury's finding that the negligence of defendant and plaintiff's decedent contributed equally to the decedent's death. The new trial in the survival action can fairly be limited to the issue of damages. Cf. *Prince v. Adams, supra.* The damages awarded by the jury can thereafter be reduced by the court in accordance with the prior comparative negligence findings.

The judgment in the wrongful death action is affirmed. The judgment in the survival action is reversed, and the action is remanded for a new trial on the issue of damages only.