## Mitchell v. Klinger

C.P. of Delaware County, no. 95-50209.

*Robert M. Wiener,* for plaintiff.
*Robert C. Steiger,* for defendant.

HAZEL, *J.,* April 9, 1997—Plaintiff Michael Mitchell sued defendant Margaret Klinger for injuries as a result of defendant's car hitting plaintiff's bicycle. A jury trial was held on April 9, 1996 and April 10, 1996.

At trial, the parties stipulated that the medical bills were in the amount of $6,866.50. (N.T. 4/10/96 p. 173.) At the conclusion of the trial, the jury found the defendant 60 percent negligent, the plaintiff 40 percent negligent and the negligence of both plaintiff and defendant a substantial factor in bringing about the harm to the plaintiff. The jury awarded damages in the amount of $6,867.50, one dollar over the medical bills. (N.T. 4/10/96 pp. 194-96.)

Subsequent to the trial, plaintiff filed a motion for new trial and after careful review, this court, by order dated July 17, 1996, granted a new trial as to damages only. It is from this order that defendant appeals, thus necessitating this opinion.

Defendant raises the following issues on appeal:

(1) The trial court abused its discretion in disturbing the jury verdict;

(2) The trial court abused its discretion in ordering a new trial;

(3) The trial court abused its discretion in ordering a new trial limited to the issue of damages only; and

(4) If a new trial was indeed warranted, the trial court should have granted a new trial on the issues of both liability and damages. (Defendant's statement of matters complained of on appeal.)

In essence, defendant is arguing that this court should not have granted a new trial, and even if this court did not err in granting a new trial, it should have granted a new trial as to both liability and damages, not simply damages.

First, defendant claims that the court erred in disturbing the jury's verdict, which is, in essence, the same claim as the court erred in granting a new trial. However, this court did not abuse its discretion in ordering a new trial as to damages.[1]

"[T]o support the granting of a new trial for inadequacy, 'the injustice of the verdict should stand forth like a beacon.' So long as the verdict bears a reasonable resemblance to the damages proved, it is not the function of the court to substitute its judgment for that of the

_____

1. "Whether a new trial should be granted on the grounds of inadequacy of damages is a matter within the trial court's discretion. . . . The purpose of appellate review is to determine if the trial court abused its discretion." *Dougherty v. McLaughlin,* 432 Pa. Super. 129, 133, 637 A.2d 1017, 1019 (1994). (citations omitted)

jury." *Bortner v. Gladfelter,* 302 Pa. Super. 492, 496, 448 A.2d 1386, 1388 (1982).

"As a rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, *or that the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury,* or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evident failure of justice to the plaintiff, or where the award is so inadequate that it should not be permitted to stand. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more." *Dougherty v. McLaughlin,* 432 Pa. Super. 129, 133-34, 637 A.2d 1017, 1019 (1994). (emphasis in original)

As stated previously, defendant was found to be 60 percent negligent. Given the stipulated amount of the medical bills of $6,866.50, the jury only awarded damages in the amount of $6,867.50, one dollar over the medical bills.

In reviewing the evidence presented in the case, plaintiff testified to the actual accident, as well as his injuries. He had surgery on his knee and was in pain for a length of time after the accident. (N.T. 4/9/96 pp. 142-46, 147-48, 155-65.) Further, at the time of trial, he could still not do everything that he could before the accident and still experienced occasional pain. (N.T. 4/9/96 pp. 166-67, 170-71.)

Two doctors testified on behalf of the plaintiff, indicating that plaintiff would continue to suffer pain, at least minimally. (N.T. 4/9/96 pp. 230-31; 4/10/96 pp. 17-18.) While the doctors were cross-examined by

defendant's attorney, the doctors held to their opinions. (N.T. 4/9/96 pp. 232-38; 4/10/96 pp. 20-33.)

Dr. Mitchell Krauss testified that plaintiff, in addition to having surgery performed on his knee, received physical therapy for approximately three months. (N.T. 4/9/96 pp. 219-20.) At the end of the three-month period, plaintiff was still in severe pain. (N.T. 4/9/96 p. 220.) Moreover, Dr. Krauss also testified that the pain suffered by plaintiff was not due to plaintiff's previous accident or previous "beating," but that plaintiff's injuries were caused by the accident. (N.T. 4/9/96 pp. 208, 217-18, 228.)

Dr. Mark Avart testified that prior to surgery, the injury to plaintiff's knee prevented him from standing or walking for any length of time and affected him "significantly" when he climbed stairs or kneeled. (N.T. 4/10/96 p. 13.) When Dr. Avart last saw plaintiff, plaintiff still experienced mild pain around the kneecap, joint tenderness and weakness in the thigh muscle. (N.T. 4/10/96 pp. 16-17.) Dr. Avart also testified that plaintiff's injuries were caused by the accident. (N.T. 4/10/96 p. 17.)

The only evidence presented by defendant was the defendant herself and she testified only as to the occurrence and what she observed about the plaintiff's injuries immediately following the accident. (N.T. 4/9/96 pp. 125-38; 4/10/96 pp. 42-54, 55-73.)

Prior to deliberation, the court also gave the following instruction to the jury:

"If you find the defendant liable to the plaintiff in accordance with the instructions I've given you, then the plaintiff is entitled to be fairly and adequately compensated for any physical pain, any mental anguish, any discomfort, any inconvenience, and any distress, as you find he has endured from the date of this accident until today. And which you find he will endure in the future as a result of this accident. If you find the de-

fendant liable to the plaintiff in accordance with the instructions which I've given to you, then the plaintiff is entitled to be fairly and adequately compensated for any past, or present, or future loss of his ability to enjoy any of the pleasures of life as a result of his injuries from this accident." (N.T. 4/10/96 pp. 173-74.)

In addition, the jury verdict form stated:

"State the amount of damages sustained by the plaintiff as a result of the accident, without regard to and without reduction by the percentage of causal negligence, if any, that you have attributed to the plaintiff?" (N.T. 4/10/96 pp. 194-96.)

In *Dougherty*, the plaintiff was involved in a car accident and sustained injuries, including two days in the hospital, permanent scarring, nerve damage, concussion and torn shoulder ligaments.

The jury returned a verdict solely for the cost of unreimbursed hospital care, excluding damages for pain and suffering. The court determined that plaintiff should be given a new trial as to damages.

"Where a jury awards a plaintiff his medical expenses, they make a finding that the expenses were related to the defendant's actions in injuring the plaintiff. . . . However, by not awarding any pain and suffering, the jury also makes a finding that the plaintiff did not suffer as a result of his injuries and subsequent surgery. . . . Such findings are inherently inconsistent." *Dougherty, supra* at 134, 637 A.2d at 1020. (citations omitted)

"Here, the trial court properly instructed the jurors that if they found McLaughlin to be liable to Dougherty, they must compensate Dougherty for all physical and financial injury sustained as a result of the accident. . . . Further, the court listed the items that must be included in the determination of damages, including pain, suffering, embarrassment, and disfigurement. . . .

"The nature of Dougherty's injuries indicates at least some pain and suffering. The jury's failure to award

any damages for pain and suffering is clearly inconsistent with its award of medical expenses *alone* and resulted in an inadequate verdict. The trial court recognized that the jurors had disregarded or misapprehended the court's instructions. . . . In an attempt to remedy the inadequate verdict, the court granted Dougherty's motion for additur, though it denied his motion for a new trial. As we concluded above, the court had no authority to grant additur. Consequently, we are constrained to conclude that a new trial is necessary . . . ." *Id.* at 134-35, 637 A.2d at 1020. (citations omitted)

In *Bortner,* no damages were awarded as to a survival claim to the decedent's estate. The Superior Court stated that "the finding . . . that the decedent's estate sustained no pecuniary loss is unreasonable and not supported by the evidence" and referred to the uncontradicted evidence of his net earnings of his life. Of importance is the next statement by the court:

"The verdict cannot be explained as a compromise. In response to a special interrogatory, the jury found that 50 percent of the total causal negligence was attributable to appellee and 50 percent to the decedent. When asked to state 'the amount of damages, if any, sustained by the plaintiff as a result of the accident without regard to and without reduction by the percentage of causal negligence, if any, that you have attributed to the plaintiff's decedent,' the jury answered: 'No figure.' This suggests that the jury must have been influenced by a misconception of the law, or by some other improper consideration. Where a jury refuses to give any recovery at all to a litigant who is entitled to at least some recovery, 'we can have no confidence in the fairness of the jury's deliberations.' . . . Consequently, we are constrained to conclude that a new trial is necessary and that it was an abuse of discretion for the trial court to refuse to grant the same." *Bortner,*

*supra* at 499, 448 A.2d at 1390. (citations omitted) See also, *Deitrick v. Karnes,* 329 Pa. Super. 372, 478 A.2d 835 (1984); *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995).

Lastly, in the case of *Hill v. Bureau of Corrections,* 124 Pa. Commw. 172, 555 A.2d 1362 (1989), a prisoner was injured trying out for a prison baseball team, fracturing his ankle in three places. The defendant was found 100 percent liable but awarded only $1,800 damages beyond payment of his medical bills, which totalled $5,844.

The Commonwealth Court determined that there was no likelihood of compromise in this case. The plaintiff testified to his pain and suffering, as did a doctor. "Although a jury need not accept even uncontradicted testimony, . . . there appears to be no basis in this case for a finding that Hill does not suffer some residual impairment of his ability to enjoy life's pleasures as a direct result of his injury. The trial judge expressly instructed the jury that they should compensate Hill for this distinct element of damages if they found the bureau liable. . . . Therefore, the portion of the award intended to compensate for pain and suffering is actually less than $1,800." *Hill, supra* at 181, 555 A.2d at 1367. (citations omitted) (footnote omitted) The court reversed the trial court's denial of a new trial.

"We emphasize that we do not establish any particular ratio of pain and suffering damages to special damages or any particular dollar figure as automatically constituting inadequacy. Each case must be examined in the light of its unique facts. As the cases discussed above demonstrate, however, an award for pain and suffering with respect to obviously serious injuries need not be zero or nominal or a trivialization of the plaintiff's injury in order to be inadequate." *Id.* at 183, 555 A.2d at 1368. See also, *Mueller v. Brandon,* 282 Pa. Super. 37, 42, 422 A.2d 664, 666 (1980): "[n]o jury is free

to conclude that the presence of a nonwalking ankle cast for four weeks or undergoing nasal surgery do not necessarily involve substantial pain, suffering and inconvenience."

In *Kiser v. Schulte,* 538 Pa. 219, 648 A.2d 1 (1994), the court stated:

"We agree . . . that a jury is free to believe or disbelieve opinion evidence presented by an expert witness. . . . However, here, we must once again point out that the uncontroverted testimony of the appellee's expert established that the net economic loss resulting from Ms. Kiser's death ranged from $232,400 to $756,081.43. The defense did not present any other experts or any other evidence to the contrary on the question of damages. When faced with such uncontroverted evidence, a jury's verdict must bear a reasonable resemblance to the proven damages. . . . This is not a case in which the jury was entitled to disbelieve one expert in favor of another as only one expert was presented. Nor is this a case where the jury could completely discredit the testimony of [the expert] as even under the scrutiny of extensive cross-examination his calculations yielded a net economic loss figure of $232,400. Instead, in this case, the jury totally disregarded the only evidence presented on the question of damages and settled on a somewhat capricious and inadequate amount of $25,000. The jury verdict here simply does not bear any rational relationship to the uncontroverted testimony presented by [the expert]." *Id.* at 229-30, 648 A.2d at 5-6. (citations omitted) (footnotes omitted)

Based upon the facts of the present case and the above-cited case law, a new trial should be granted. Although plaintiff in the present case did receive money for pain and suffering, it was only one dollar. Given the court's instruction in the present case, and "[w]here a jury awards a plaintiff his medical expenses, they make a finding that the expenses were related to the

defendant's actions in injuring the plaintiff. . . . However, by not awarding any pain and suffering, the jury also makes a finding that the plaintiff did not suffer as a result of his injuries and subsequent surgery. . . . Such findings are inherently inconsistent." *Dougherty, supra* at 134, 637 A.2d at 1020. (citations omitted)

Given the lack of evidence by defendant as to damages, the testimony of the plaintiff's doctors that the accident caused the injuries, and that plaintiff will continue to suffer as a result of his injuries, the plaintiff's own testimony, "the injustice of the verdict should stand forth like a beacon." This verdict does not bear a reasonable resemblance to the damages proved. *Bortner, supra* at 496, 448 A.2d at 1388.[2]

As in *Hill* and *Kiser,* the evidence was uncontroverted as to damages and pain suffered by plaintiff and there was no basis for finding that plaintiff did not suffer some residual impairment, given his knee surgery and therapy. Further, contrary to defendant's assertion, this case is not a compromise verdict, given the specific questions asked of the jury on the jury verdict form, which was similar to *Bortner.* Lastly, as is indicated in *Hill,* nominal damages can form an insufficient verdict, as opposed to no pain and suffering damages.

The remaining issue is whether this court abused its discretion in awarding a new trial as to damages only, as opposed to both liability and damages.

"A new trial limited to the issue of damages will be granted where: (1) the issue of damages is not 'in-

2. The present case stands in contrast to *Dawson v. Fowler,* 384 Pa. Super. 329, 333, 558 A.2d 565, 567 (1989) which affirmed a denial of a new trial as to damages only: "regarding appellant's request for lost wages and pain suffered, our scrutiny of the record reflects that the degree of appellant's injury, and any resultant pain and suffering, were subject to question." This court's review of the record before it reflects that the degree of plaintiff's injury and resultant pain and suffering were not subject to question.

tertwined' with the issue of liability; and (2) where the issue of liability has been 'fairly determined' or is 'free from doubt'." *Kiser, supra* at 233, 648 A.2d at 8.

In *Kiser,* it was argued that the verdict was a compromise verdict and, therefore, liability was still an issue. A compromise verdict is one in which "the jury, in doubt as to the defendant's negligence or plaintiff's contributory negligence, returns a verdict for the plaintiff but in a lesser amount than it would have if these questions had been free from doubt." *Id.* The court stated that the verdict was not a compromise verdict:

"The jury was clearly not in doubt as to the negligence of the defendants or as to the contributory negligence of Ms. Kiser. The jury completely exonerated two of the defendants and apportioned the negligence 60 percent-20 percent-20 percent among the [other defendants]. The jury found in the special interrogatories that Ms. Kiser was contributorily negligent, but also found that this negligence was not a substantial factor in bringing about her death. We find that the decision of the jury as evidenced by the special interrogatories was unambiguous and free from doubt.

"Nor do we believe that this is a case where the issue of damages is intertwined with the issue of liability. It is fair here to both parties to limit the new trial to the specific issue of damages . . . (new trials should be limited to specific issues only when the procedure is fair to both parties). The appellants had a fair opportunity to litigate the issues of negligence and contributory negligence and the jury found against them and apportioned the damages accordingly. It would be unfair to the Kaisers [sic] to force them to re-litigate these issues in order to obtain the full extent of damages for themselves and the decedent's estate after liability had been so clearly determined by the jury." *Id.* at

233-34, 648 A.2d at 8. (citation omitted) (footnote omitted)

"A trial court may, in its discretion, order a separate trial on a separate issue in a cause of action in furtherance of convenience or to avoid prejudice. See Pa.R.C.P. 213(b). . . . Additionally, a trial court may grant a new trial on the issue of damages alone where the issue of liability has been fairly determined and the issue of damages is readily separable." *Ecksel v. Orleans Construction Co.,* 360 Pa. Super. 119, 126, 519 A.2d 1021, 1024 (1987).

In the present case, the jury verdict form clearly delineated negligence/liability from damages.

Question 1: Do you find the defendant negligent?

Question 2: Was the defendant's negligence a substantial factor in bringing about the harm to the plaintiff?

Question 3: Was the plaintiff contributorily negligent?

Question 4: Was the plaintiff's contributory negligence a substantial factor in bringing about his harm?

Question 5: Taking the combined negligence that was a substantial factor in bringing about the plaintiff's harm as 100 percent, what percentage of that causal negligence was attributable to the defendant, and what percentage was attributable to the plaintiff?

State the amount of damages sustained by the plaintiff as a result of the accident, without regard to and without reduction by the percentage of causal negligence, if any, that you have attributed to the plaintiff? (N.T. 4/10/96 pp. 194-96.)

A review of the two questions asked by the jury during deliberations was as follows:

"If weight of percentage, does percentage also apply to medicals? Does any medical award go directly to medical providers, or does it go to plaintiff?" (N.T. 4/10/96 p. 193.)

These questions indicate that there was confusion as to the final amount of damages to be awarded, not as to liability.

Because the jury found the defendant 60 percent negligent and the plaintiff 40 percent negligent, the jury clearly apportioned the negligence and it cannot be argued that the jury was in doubt as to defendant's negligence or plaintiff's contributory negligence. *Kiser, supra.* Therefore, this verdict was not a compromise verdict. Moreover, as in *Kiser,* the issue of damages is not "intertwined" with the issue of liability, and liability was fairly determined.

Again, the present case is distinguishable from *Riddle v. Anderson,* 85 Pa. Commw. 271, 481 A.2d 382 (1984), which awarded a new trial as to liability and damages. While the court in *Riddle* believed that the issues were not so intertwined as to preclude a new trial on damages only, the court determined that the question of liability was not fairly determined and the verdict was a compromise verdict. After five hours of deliberation, "the jury asked the trial court whether a damage verdict had been reached if nine jurors agreed upon an amount regarding the award of loss of past and future earnings but three jurors felt that no damages with regard to earnings should be awarded. The court replied that 10 of 12 jurors must agree to the amount, and it sent the jury back to continue its deliberations. When the jury returned with its verdict, no damages whatever had been awarded for loss of past and future earnings." *Id.* at 277, 481 A.2d at 385.

The questions in the present case do not indicate that the verdict was a compromise in comparison to the questions asked by the jury in *Riddle.* Therefore, a new trial as to damages only was proper.

For all of the foregoing reasons, this court did not abuse its discretion in disturbing the jury verdict by ordering a new trial as to damages only.