643 A.2d 1090

COMMONWEALTH of Pennsylvania, Appellant,

v.

Darryl RILEY.

COMMONWEALTH of Pennsylvania

v.

Darryl RILEY, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 25, 1994.

Filed May 9, 1994.

Reargument Denied July 13, 1994.

forth the correct method for the assessment of delay damages in maritime cases.

Peter J. Gardner and Kathy L. Echternach, Asst. Dist. Attys., Philadelphia, for the Com.

Andrew G. Gay, Philadelphia, for Riley.

Before CAVANAUGH, TAMILIA and CERCONE, JJ.

TAMILIA, Judge:

These are cross-appeals from the Order of June 10, 1993 granting appellant, Darryl Riley, a new trial and denying his motion for arrest of judgment. Riley appeals from the denial of his motion for arrest of judgment, and the Commonwealth appeals the granting of a new trial.[1] On October 21, 1992, following a nonjury trial, Riley was convicted of rape [2] and indecent assault.[3] In his appeal (No. 02300 Philadelphia, 1993), Riley alleges the evidence presented at trial was insufficient to sustain a conviction. Specifically, he argues the Commonwealth failed to prove the element of forcible compulsion or threat thereof, which is a necessary requirement under 18 Pa.C.S. § 3121(1) or (2).

1. Since the court granted appellant a new trial, judgment of sentence was not entered. As a general rule, a defendant may take an appeal only from the judgment of sentence. However, Pa.R.A.P. 311(b)(5) recognizes an exception to that rule: "[A]n appeal may be taken as of right from ... an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge...." *See also Commonwealth v. Liddick*, 471 Pa. 523, 370 A.2d 729 (1977).

2. 18 Pa.C.S. § 3121.

3. *Id.*, § 3126.

 In reviewing a sufficiency of the evidence claim this Court must determine whether the evidence, and all reasonable inferences deducible therefrom, when viewed in a light most favorable to the Commonwealth, are sufficient to establish all the elements of the crime beyond a reasonable doubt. *Commonwealth v. McCullum*, 529 Pa. 117, 602 A.2d 313 (1992). A person commits a rape when, *inter alia*, "he engages in sexual intercourse with another person not his spouse: (1) by forcible compulsion." 18 Pa.C.S. § 3121(1). Forcible compulsion is an act, including physical force as well as moral, psychological or intellectual force, used to compel a person to engage in sexual intercourse against that person's will. *Commonwealth v. Rhodes*, 510 Pa. 537, 554, 510 A.2d 1217, 1226 (1986). Moreover, the degree of that force is relative and depends on the totality of the facts and circumstances of the particular case. *Id.* The victim need not resist a person trying to force sexual intercourse against her will. *Id.* at 556, 510 A.2d at 1227; 18 Pa.C.S. 3107.

 In the present case, the evidence, viewed in a light most favorable to the Commonwealth, clearly establishes the element of forcible compulsion necessary for a rape conviction. The victim and Riley met on a dinner date arranged by mutual friends. Two days after this date, they arranged to meet after the victim finished work at a Philadelphia restaurant. Riley picked up the victim at 2:20 a.m., however as they drove in his car the victim explained she was tired from eight hours of work and asked for a rain check. Riley, who also claimed to be tired, asked the victim if he could sleep in her one-room studio apartment. The victim agreed and both went into the apartment. While appellant lay on the bed watching television, the victim showered and changed into her nightwear, which consisted of underwear, a T-shirt, a knee-length nightshirt and a robe. Riley asked if he could remove his pants so he could be more comfortable and the victim said yes. She got into bed and removed her robe, whereas Riley got under the blankets and asked for and received a goodnight kiss.

The victim kissed Riley once, however, he rolled on top of her, with his body weight pinning her, and attempted to kiss her more forcefully. The victim resisted, ordering Riley to stop. She moved her head from side to side in an attempt to avoid his lips. He resisted her pleas, telling the victim to "relax, go with it." The testimony revealed Riley was approximately seven inches taller and thirty pounds heavier than the victim, however, despite being pinioned, the victim grabbed Riley's hips attempting to push him off her body. As he removed her underwear and penetrated her, the victim pleaded to stop and get off her. Riley kept moving about until he ejaculated.

Riley repeatedly apologized for his actions immediately after the incident and the following morning at which time the victim asked him to leave her apartment. That afternoon, the victim went to the hospital for an examination. Riley went to the hospital and again apologized to the victim, stating he ". . . didn't mean to force her to have sex and rape her. . . ." Furthermore, he assured the victim he was going to seek help from Naval authorities, as he was a Navy enlistee, and offered to pay her medical bills.

This evidence clearly demonstrated the victim did not consent to the act. Riley exerted enough force to overcome any resistance by the victim. The victim refused to have sexual intercourse, however, Riley forcibly compelled her to do so by laying on top of her, pinning her with his body weight. He thwarted her attempts to resist sexual contact and then penetrated her. This is plainly forcible compulsion. *See Commonwealth v. Meadows*, 381 Pa.Super. 354, 553 A.2d 1006 (1989). Moreover, Riley's repeated apologies, subsequent admissions and promise to seek help confirm that he recognized the intercourse was forcible. Accordingly, we find appellant Darryl Riley's argument without merit.

The Commonwealth, in its appeal (No. 02265 Philadelphia, 1993), argues the trial court erred in *sua sponte* granting a new trial on the grounds that the Rape Shield Law is uncon-

stitutional.[4] The Commonwealth alleges Riley never raised the claim and the record was wholly inadequate to make such a determination. Furthermore, the proposed inquiry into the victim's sexual past was irrelevant to the defense at trial.

The trial court did not find the Rape Shield Law unconstitutional *per se*, but rather questioned whether it must yield to appellant Riley's constitutional right of confrontation in this situation. Specifically, the Rape Shield Law was implicated when mention of the victim's pregnancy (which she allegedly discovered shortly after the rape) was elicited by the Commonwealth on direct examination. According to the record, the victim intended to have an abortion and wanted Riley to pay for it. He agreed to pay and later sent part of the requested money to the victim. On cross-examination, Riley's counsel attempted to explore the circumstances of the pregnancy and the fact the victim requested $500 for the abortion but received only $200. However, the Commonwealth objected to the questions, which were sustained by the trial court as being in violation of the Rape Shield Law.

During post-trial motions, the trial judge determined that the evidence excluded by sustaining the Commonwealth's objections was obviously intended to show fabrication of the forcible rape charge in an attempt to compel Riley to pay for her abortion. Thus, by admitting evidence of the victim's pregnancy, which might have been inadmissible without a Rape Shield motion if offered by Riley, the Commonwealth cannot object to him attempting to expand upon that evidence to show the victim's bias. In other words, had the Commonwealth not "opened the door" on this point, Riley would not have been permitted to raise it without filing a proper motion. The Commonwealth alleges this cross-examination is exploration into prior sexual activity prohibited by the Rape Shield Law. However, the Commonwealth ignores its role in placing the matter in issue, which nullifies the Rape Shield Law requirement of a prior written motion and hearing on the issue. Accordingly, the court granted a new trial.

4. We note that appellant, Darryl Riley, did not file a brief in opposition to the Commonwealth's appeal.

420

If a trial court determines that the process has been unfair or prejudicial, even where the prejudice arises as the result of actions by the court, it may, *sua sponte,* grant a new trial in the interest of justice. *Commonwealth v. Powell,* 527 Pa. 288, 590 A.2d 1240 (1991). However, the granting of a new trial in the interest of justice cannot be arbitrary, but must be supported by the record. *Id.* This Court will not disturb such a granting, absent an abuse of discretion. *Id.* In such a case the appropriate remedy is to grant a new trial and not dismissal.

The purpose of the Rape Shield Law is to prevent irrelevant testimony relating to the victim's past involvement in sexual activities from being presented to the trier of fact in order to protect the victim from being prejudiced because of unwarranted perception as to her moral character rather than based on the facts of the case. The Rape Shield Law is not meant to prevent the admission of evidence that goes to bias or motive for testifying against the defendant when it might be exculpatory as to the defendant and establish a motive for the victim to color her testimony. The rationale supporting this concept is clearly spelled out as follows in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas,* 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065 (1965)." *Id.* at 315, 94 S.Ct. at 1110, 39 L.Ed.2d at 353. Specifically, "[an] attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudice or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. . . . We *have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.*" *Id.* at 316–17, 94 S.Ct. at 1110, 39 L.Ed.2d at 354 (emphasis added).

■ Contrary to the Commonwealth's claim, the court need not treat the Rape Shield Law as being unconstitutional to resolve this issue and to grant a new trial. In fact, the court properly found, by not permitting cross-examination of the witness, it denied Riley protection of a constitutional right not implicated by the Rape Shield Law. The trial court was well within its discretion to grant a new trial when there existed prejudicial error in denying the defendant his right to cross-examination on an issue which dealt with motive or bias raised on direct examination by the Commonwealth. The Rape Shield Law does not abrogate constitutional rights but is simply a rule of evidence to deny the admission of irrelevant and prejudicial evidence as to character.

Order granting appellant Darryl Riley a new trial and denying his motion for arrest of judgment affirmed. Case remanded for trial in accordance with this Opinion.

Jurisdiction relinquished.

Dissenting opinion by CERCONE, J.

CERCONE, Judge, dissenting:

I dissent from the majority's decision to grant a new trial in the instant case. The Rape Shield Law is a bar to admission of testimony of prior sexual conduct of a victim, whether consensual or nonconsensual, unless it has probative value which is exculpatory to the defendant. *Commonwealth v. Smith*, 410 Pa.Super. 363, 599 A.2d 1340 (1991). Exceptions to the broad exclusion of the rape shield law will arise "when a specific proffer demonstrates that the proposed inquiry is intended to elicit relevant evidence, which is more probative than prejudicial, and which is not cumulative of other evidence available." *Id.* at 368, 599 A.2d at 1342, quoting *Commonwealth v. Nieves*, 399 Pa.Super. 277, 288, 582 A.2d 341, 347 (1990). However, in order to invoke such an exception, there must be an adequate, specific, *written* offer of proof. *Commonwealth v. Kunkle*, 424 Pa.Super. 499, 623 A.2d 336 (1993).

In the instant case, the lower court awarded appellee a new trial on the basis that he had been precluded from cross-

examining the complainant as to whether or not her pregnancy was caused by him. As the lower court notes, however, no specific proffer was made in regard to the proposed cross-examination. The nature of the questions posed by the defense on cross-examination indicate that the testimony sought would obviously have delved into areas prohibited by the Rape Shield Law. The majority would find the requirement of a specific proffer of evidence waived in this case. I must strongly disagree with this conclusion.

The rape shield laws as enacted by the various states "were intended to end the abuses fostered by the common law rule[1] by limiting the harassing and embarrassing inquiries of defense counsel into irrelevant prior sexual conduct of sexual assault complainants." *Commonwealth v. Nieves,* 399 Pa.Super. 277, 286, 582 A.2d 341, 346 (1990). The requirement of a specific proffer of evidence was designed to prevent "fishing expedition" types of intrusions into areas protected by the Rape Shield Law. *Commonwealth v. Wall,* 413 Pa.Super. 599, 606 A.2d 449 (1992), *allocatur denied,* 532 Pa. 645, 614 A.2d 1142 (1992).

The line of inquiry upon which the defense embarked on cross-examination of the victim herein was a fishing expedition of the precise type precluded by the Rape Shield Law. The defense made no specific proffer at trial, or at any time since then, of the evidence which he intended to elicit from such inquiry. On the other hand, the inquiry itself provided full opportunity for speculation and innuendo concerning the prior sexual history of the victim. The fact that the case was not tried before a jury seems to have had little effect in minimizing the prejudicial nature of the defense' attempt to inquire into rape shield protected areas. Indeed, the trial court, who was the trier of fact in the instant case, granted appellee a new trial on the basis of the exclusion of the protected evidence, even though appellee did not raise a specific proffer

1. The common law rule required that evidence of a female rape complainant's general reputation for morality and chastity was deemed admissible on the issue of consent. *Commonwealth v. Nieves, supra,* 399 Pa.Super. at 286, 582 A.2d at 346.

of evidence at trial or in post-verdict motions.[2] The trial court's *sua sponte* granting of a new trial on this basis keenly demonstrates the powerful prejudicial nature of inquiries by the defense into the past sexual history of a female rape complainant. *See Commonwealth v. Nieves, supra,* 399 Pa.Super. at 286, 582 A.2d at 346 (admission of evidence of female rape complainants' general reputation for morality and chastity resulted in notorious abuse of rape victims by defense attorneys, essentially putting the victim on trial).

As to the probative nature of the testimony which the defense sought to admit,[3] I acknowledge that the defense was interested in undermining the credibility of the complainant by attempting to establish some motive to testify falsely against the appellee. However, the testimony which the defense apparently sought on cross-examination (*i.e.,* that appellee or someone other than him had impregnated the victim prior to the alleged rape incident) would have been incredibly weak in light of the other testimony of record. That testimony included evidence that the alleged rape occurred two days after the victim and appellee met, the victim verbally and physically resisted the advances of appellee, appellee repeatedly apologized to the complainant for his actions after the incident and admitted to her that he had "raped" her, as well as appellee's payment of certain of the victim's medical bills. In contrast with the enormously prejudicial nature of the testimony sought to be elicited, its probativeness of the issues before the court was clearly inferior and attenuated.

For these reasons, I would find that the trial court properly sustained the Commonwealth's objections to the testimony sought to be introduced by the defense on cross examination. The basis of the trial court's ruling, the prohibition of the testimony under the Rape Shield Law, was correct. It was error for the lower court to have awarded appellee a new trial

**2.** Appellee does not even present a specific proffer of evidence in the instant appeal.

**3.** Again, we must note we are engaging in speculation because of the absence of a specific proffer of evidence.

424

on the basis of the exclusion of the evidence, and accordingly, I note my dissent.